IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17CV745-GCM

| | | |
|---|---|---|
| CHAZZ J. ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| GLENN INDUSTRIAL GROUP, INC., | ) | |
| GLENN UNDERWATER SERVICES, | ) | |
| INC., and GLENN UNDERWATER | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court upon Defendants' Motion for Summary Judgment. The motion has been fully briefed and is ripe for disposition.

**FACTUAL BACKGROUND**

Glenn Industrial Group, Inc., formerly known as Glenn Underwater Services, Inc. ("Glenn"), is in the business of providing underwater inspection and repair services, primarily to utility companies. The business is high risk, and workplace safety is a priority. Glenn's nonoffice employees – mostly divers and dive tenders (diver assistants) – are all male. Prior to his termination Plaintiff was employed by Glenn as a diver/tender.

Upon his hire in July of 2015, Mr. Roberts received and signed for a copy of Glenn's handbook. Glenn's handbook includes a comprehensive "No Harassment" policy. The policy requires that all complaints of sexual harassment be reported to Richard L. Glenn ("Mr. Glenn"), Glenn's CEO.

Andrew Rhyner ("Rhyner") was Plaintiff's supervisor. Plaintiff alleges that Rhyner engaged in a continuous practice of ridiculing and demeaning Plaintiff by calling him gay, using

1

sexually explicit and derogatory remarks towards him, and physically threatening him. Plaintiff was physically slapped, put in a headlock, and pushed by Rhyner. (Amd. Compl. ¶ 10). Plaintiff specifically identified the following comments he heard over the course of his employment: he was "gay"; he was a "retard"; "how much dicks would I suck for money"; "I have retard strength." Plaintiff asserts that he reported Rhyner's behavior to Bruce Evans (Rhyner's boss) and Ana Glenn, the vice-president of the company and the person in charge of Human Resources.[1] Plaintiff admits that he never reported any alleged sexual harassment to Mr. Glenn. No action was taken against Rhyder. Plaintiff also asserts that he made numerous complaints about safety.

Plaintiff was involved in a work-related accident on March 16, 2016, when he burned his hand while fueling a piece of equipment at a job site in Eden, North Carolina. Defendants contend that Plaintiff was not wearing safety gloves at the time. However, Plaintiff claims that he was wearing protective equipment. Plaintiff met with Mr. Glenn who counseled him on the importance of using safety equipment and told him that he would have to release him if he had another safety incident. During their meeting, Plaintiff made no mention to Mr. Glenn that he felt he was being mistreated, harassed, or otherwise discriminated against while at work. Plaintiff returned to the job site the next day.

Mr. Glenn's only other significant interaction with Plaintiff was in April 2016 when he terminated him. On Monday, April 11, 2016, Brandon Neal, the supervisor at the job site in Eden, contacted Mr. Glenn to inform him that Mr. Neal had removed Plaintiff from the site. Mr. Neal informed Mr. Glenn that Plaintiff had been disruptive and acting erratic all morning. On the job that morning, Plaintiff appeared confused and was working in the wrong area. Defendants

---

[1] Ana Glenn is also the wife of Mr. Glenn.

contend that Plaintiff was later found to be in a fall hazard area, swaying and unsure of his footing, without his hardhat, safety glasses, or gloves, and without fall protection connected. Mr. Neal then sent Plaintiff back to the company hotel after first noting that his eyes were glassed over and he was slurring. Plaintiff disputes that he was under the influence of drugs or alcohol.

Mr. Glenn directed Thomas Grice, Glenn's safety manager, to pick Plaintiff up, take him for a drug test, and bring him to Charlotte.[2] Mr. Grice informed Mr. Glenn that Plaintiff was incoherent, that his speech was slightly slurred, and that his eyes were dazed. Mr. Glenn met with Plaintiff that same afternoon. Defendants claim that Plaintiff did not deny his various safety violations from earlier in the day. He did deny using drugs or being intoxicated at work. Plaintiff again made no mention to Mr. Glenn that he felt he was being mistreated, harassed, or otherwise discriminated against while at work. Defendants claim that Mr. Glenn made the decision to terminate Plaintiff based upon the two safety incidents.

Plaintiff's Amended Complaint alleges violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq.* ("Title VII") for sexual harassment and retaliation. Plaintiff also alleges a common law claim of intentional infliction of emotional distress ("IIED"). The Amended Complaint also contains a Wage and Hour Claim, but Plaintiff has indicated that he is no longer pursuing that claim.

**DISCUSSION**

Summary judgment is appropriate when the moving party submits evidence showing "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, summary judgment must be entered

---

[2] Plaintiff passed the drug test.

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . .." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the moving party establishes that there are no genuine issues of material fact, the burden shifts to the non-moving party who "must do more than simply show that there is some metaphysical doubt as to material facts." *Id*. at 586. Under Fed. R. Civ. P. 56(c)(1), the nonmoving party may not rely merely upon allegations or denials in its own pleadings but must set forth specific facts showing that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must cite competent, admissible evidence, and there must be sufficient evidence for the jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at. 249-50. If the non-moving party fails to produce the required evidence, the moving party must prevail on its motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Even where intent and motive are crucial to determining the outcome of the cause of action, unsubstantiated speculation and bald assertions will not withstand summary judgment. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996). Summary judgment is appropriate and trial is unnecessary if either "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

This case is, at its crux, a same-sex sexual harassment case. Plaintiff alleges a sexually hostile working environment. Specifically, he alleges that his "work environment was permeated with unwelcomed sexually harassing and derogatory comments which were so severe and pervasive that they altered his work environment." (Amd. Compl. ¶ 15). In *Oncale v.*

*Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), the Supreme Court identified three situations that may support a same-sex claim of harassment based on gender: (1) the plaintiff presents credible evidence that the alleged harasser is homosexual and made "explicit or implicit proposals of sexual activity"; (2) the plaintiff shows that the harasser was motivated by general hostility to the presence of members of the same sex in the workplace; or (3) the plaintiff offers "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Oncale*, 523 U.S. at 80-81. *See also McDowell v. Nucor Bldg. Sys.*, No. 3:10-cv-00172, 2012 WL 714632 at *6-*7 (D.S.C. Feb. 29, 2012) (adopting Recommendation and Report of Magistrate), *aff'd*, 574 Fed. App'x. 462 (4th Cir. 2012).

The second and third *Oncale* situations are not applicable. There is no evidence that Rhyner was motivated by a general hostility towards men in the workplace, and Glenn's work sites are not mixed-sex workplaces – they are all male – so there is no possibility of comparative evidence. With respect to the first *Oncale* situation, the Court requires not just evidence, but "credible evidence," that the offending supervisor is gay. *Oncale*, 523 U.S. at 80. The only evidence in the record is that Rhyner is straight. Plaintiff does not allege otherwise. Moreover, there is no evidence that Rhyner made "explicit or implicit proposals of sexual activity." Plaintiff does describe comments made by Rhyder that are certainly vulgar and inappropriate, but none could be characterized as a proposal of sexual activity. Conduct that is "merely tinged with offensive sexual connotations" is not sufficient; rather, a plaintiff must show discrimination because of his sex. *Id.* at 81. Moreover, the physical conduct allegedly directed at the Plaintiff by Rhyder, slapping on the face and putting him in a "chokehold," while inappropriate, was not of a sexual nature. Accordingly, summary judgment in favor of the Defendants is appropriate as to Plaintiff's sexual harassment claim.

In Plaintiff's claim for retaliation in violation of Title VII he alleges that he engaged in protected activity when he complained about Rhyder's sexual harassment. He alleges that "within months" of complaining to Bruce Evans about Rhyner's behavior, Plaintiff was accused of being on drugs in the workplace and was eventually terminated by Mr. Glenn.

To prove retaliation, Plaintiff must establish that he engaged in a protected activity, that Glenn took an adverse action against him, and that a causal relationship existed between his protected activity and the Glenn's adverse action. *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006). To establish a causal relationship between the alleged protected activity and the termination, Mr. Roberts must show that Mr. Glenn was aware of the protected activity at the time the alleged retaliation occurred. *Id*. at 748; s*ee also Felton v. Gates County Bd. of Educ*., No. 2:15-cv-00020, 2017 WL 420156 at *4 (E.D.N.C. Jan. 31, 2017) ("Specifically, a plaintiff must establish that the relevant decision-maker had knowledge of the protected activity at the time of the alleged retaliation."). Plaintiff has put forth no evidence that Mr. Glenn, the decision-maker, was aware of Plaintiff's complaints about sexual harassment. It is undisputed that Plaintiff did not tell him. While Plaintiff may have complained to Ana Glenn, her knowledge cannot be imputed to Mr. Glenn.

Even if Mr. Glenn had been aware of Plaintiff's protected activity, a "months" long delay between protected conduct and an adverse action is too long. The Fourth Circuit has even questioned whether a two-month delay is probative. *King v. Rumsfeld*, 328 F.3d 145, 151 n. 5 (4th Cir. 2003). Moreover, Defendants have set forth a legitimate, non-retaliatory reason for Plaintiff's termination: he violated Defendants' safety policies. As a result, Plaintiff cannot prove that his alleged protected activity was the "but-for cause" of his termination as the law

requires. *See Univ. of Texas Southwest Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Plaintiff's claim for retaliation under Title VII must fail.

Plaintiff's claim for intentional infliction of emotional distress is likewise unable to survive summary judgment. To prevail on a claim for IIED, a plaintiff must demonstrate that: (1) the defendant engaged in extreme and outrageous conduct; (2) which was intended to and did in fact cause; (3) severe emotional distress. *Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992). North Carolina courts have found conduct to be extreme and outrageous only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.*, 340 S.E. 2d 116, 123 (N.C. Ct. App. 1986). Whether the conduct alleged meets this standard is a question of law. *Lenins v. K-Mart Corp.*, 391 S.E. 2d 843, 848 (N.C. Ct. App. 1990).

North Carolina courts have been extremely reluctant to find actionable IIED claims in an employment context. *Jackson v. Blue Dolphin Comm's of N.C., LLC*, 226 F.Supp. 2d 785, 794 (W.D.N.C. 2002). This is true, even in the face of egregious facts. The Court finds that based upon the facts as alleged by the Plaintiff, Rhyner's conduct does not meet the "extreme and outrageous" threshold as a matter of law. Summary judgment is therefore granted on this claim.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment is hereby GRANTED.

Signed: January 29, 2019

Graham C. Mullen
United States District Judge