IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17CV745-GCM

| | |
|---|---|
| CHAZZ J. ROBERTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| GLENN INDUSTRIAL GROUP, INC., ) | |
| GLENN UNDERWATER SERVICES, ) | |
| INC., and GLENN UNDERWATER ) | |
| SERVICES, LLC, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court upon Defendants' renewed Motion for Summary Judgment, which is fully briefed and ripe for disposition.

I.     PROCEDURAL HISTORY

Plaintiff filed his Amended Complaint in February of 2018 asserting claims of same-sex sexual harassment pursuant to Title VII of the Civil Rights Act of 1964; retaliatory termination, also pursuant to Title VII; failure to pay overtime pay pursuant to the Fair Labor Standards Act and the North Carolina Wage and Hour Act; and intentional infliction of emotional distress pursuant to North Carolina common law. (Doc. No. 3). Plaintiff subsequently abandoned his overtime claim. (Doc. No. 22 at p. 3).

Defendants moved for summary judgment on each of the Plaintiff's claims and the Court granted this motion. (Doc. No. 22). Plaintiff appealed this Court's ruling as to his Title VII claims only. The Fourth Circuit Court of Appeals affirmed this Court's dismissal of Plaintiff's Title VII retaliation claim, but remanded the same-sex sexual harassment claim for further consideration, particularly in light of the United States Supreme Court's intervening decision in

1

*Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). (Doc. No. 28). Accordingly, the sexual harassment claim is the only claim remaining before this Court.

In reversing this Court's entry of summary judgment in favor of the Defendants, the Fourth Circuit specifically directed that:

> On remand, the district court must reexamine, based on a proper application of *Oncale* and with due consideration given to the evidence of Rhyner's physical assaults, whether Roberts established that the harassment he suffered was based on his sex. Further, the district court must examine whether the remaining elements of a *prima facie* case of sexual harassment have been satisfied as well. We therefore remand for the district court to determine whether the record could permit a reasonable jury to conclude not only that Roberts was subjected to conduct based on his sex, but that the conduct was also unwelcome, sufficiently severe or pervasive to alter the conditions of his employment and create a hostile work environment, and imputable to Glenn Industrial.

*Roberts v. Glenn Industrial Group, Inc.*, 998 F.3d 111, 121 (4th Cir. 2021) (internal citations omitted.)

## II. FACTUAL BACKGROUND

In its previous Order, this Court outlined the facts of this case, but will restate those facts herein as they apply to Plaintiff's sexual harassment claim.

Glenn Industrial Group, Inc., formerly known as Glenn Underwater Services, Inc. ("Glenn Industrial"), is in the business of providing underwater inspection and repair services, primarily to utility companies. Glenn Industrial's nonoffice employees – mostly divers and dive tenders (diver assistants) – are all male. Prior to his termination Plaintiff was employed by Glenn Industrial as a diver/tender.

Upon his hire in July of 2015, Mr. Roberts received and signed for a copy of Glenn Industrial's handbook. The handbook includes a comprehensive "No Harassment" policy. The policy requires that all complaints of sexual harassment be reported to Richard L. Glenn ("Mr. Glenn"), Glenn Industrial's CEO. However, immediately above the CEO's name, the language

2

reads: "If you have any concern that our No Harassment Policy may have been violated by anyone, you must immediately report the matter. Due to the very serious nature of harassment, discrimination and retaliation, you must report your concerns to one of the **individuals** listed below:" (emphasis added). Although the language states "individuals," only one name is listed. Further, immediately after Richard Glenn's name, phone number and address are listed, the following paragraph appears:

> If an employee makes a report to any of these members of management and the manager either does not respond or does not respond in a manner the employee deems satisfactory or consistent with this policy, the employee is required to report the situation to one of the other members of management designated in this policy to receive complaints.

(*See* Doc. No. 17-2, p.9)

Although Plaintiff is a heterosexual male, he states that he believes that some of his co-workers perceived him to be gay, and that based on that perception, he was subjected to constant harassment and verbal assaults. (Doc. No. 20-3, ¶ 2). Andrew Rhyner ("Rhyner") was Plaintiff's supervisor. Plaintiff alleges that Rhyner engaged in a continuous practice of ridiculing and demeaning Plaintiff by calling him gay, using sexually explicit and derogatory remarks towards him, and physically threatening him. Plaintiff was physically slapped, put in a headlock, and pushed by Rhyner. Plaintiff states that he was "repeatedly subjected to taunts and harassment which called into question [his] sexual preference and sexual orientation." (*Id*. at ¶ 3). Plaintiff specifically identified the following comments he heard over the course of his employment: he was "gay"; he was a "retard"; "how much dicks would I suck for money"; "I have retard strength." (Doc. No. 17-1, pp. 35-36). Rhyner admits that he possibly used the words "gay" and "faggot" with Plaintiff, although he describes it as merely "locker room banter." (*See* Doc. No. 20-2, pp 80-81).

3

While it is undisputed that Plaintiff never reported Rhyner's behavior to Mr. Glenn, he did complain to Bruce Evans (Rhyner's boss), Ana Glenn, the vice-president of the company and the person in charge of Human Resources,[1] as well as others. Plaintiff asserts that when he complained to Bruce Evans, he was told to "suck it up." (Doc. No. 17-1, p. 34). No action was ever taken against Rhyder.

### III. DISCUSSION

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.*

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

To establish a *prima facie* case of sexual harassment based on a hostile work environment a plaintiff must prove (1) unwelcome conduct; (2) based on the plaintiff's sex; (3) sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) that is imputable to the employer. *Okoli v. City of Baltimore*, 648 F.3d 216,

---

[1] Ana Glenn is also the wife of Richard Glenn.

220 (4th Cir. 2011). There is no dispute that Plaintiff considered the conduct at issue unwelcome. The Court will thus proceed to address the remaining elements.

In its original decision, this Court, citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998), held that Plaintiff could not establish that any harassment was based on Plaintiff's sex. (*See* Doc. No. 22). On appeal, the Fourth Circuit recognized that "additional forms of proof beyond those identified in *Oncale* are available to plaintiffs to demonstrate that the same-sex harassment they suffered was based on sex, including proof of discrimination based on a plaintiff's failure to conform to sex stereotypes." *Roberts*, 998 F.3d at 120. Moreover, the Fourth Circuit acknowledged that the recent *Bostick* case expanded the reach of Title VII to prohibit discrimination based on sexual orientation or transgender status. *See id.* at 121.

Viewed in the light most favorable to Plaintiff, the Court finds that Plaintiff's evidence that some of his co-workers "perceived him to be gay" and that he was "repeatedly subjected to taunts and harassment which called into question [his] sexual preference and sexual orientation" is enough to create a genuine issue of material fact that he was harassed based upon his sex.

The next question is whether the harassment was sufficiently severe or pervasive to alter the Plaintiff's conditions of employment and create an abusive work environment. The Plaintiff must be able to demonstrate that the workplace was both subjectively and objectively hostile. *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011). This proof is based on the totality of the circumstances, and courts look at factors such as the frequency of the conduct, the severity of the conduct, whether it is "physically threatening or humiliating" as opposed to a mere offensive utterance, and "whether it unreasonably interferes with an employee's work performance." *Id*.

Plaintiff has described the harassment as "repeated[]" and "constant." (Doc. No. 20-3, ¶¶ 2, 3). He states that it occurred "both at the worksite and at the hotels where we stayed," and that

he was "embarrassed and humiliated" by the harassment and also "intimidated" when it came from Rhyner. (*Id*. at ¶ 3). He claims that the conduct made him "extremely uncomfortable and concerned for my personal safety and well-being." (*Id*.) In addition to the verbal harassment, Plaintiff claims that he was physically assaulted by Rhyner on multiple occasions, including an instance where Rhyner slapped off Plaintiff's safety glasses, pushed him, and put him into a chokehold and "tried to choke [him] out." (Doc. No. 17-1, pp. 37-39). In its previous Order, this Court discounted Plaintiff's evidence of physical assaults because they were not of a sexual nature. However, the Fourth Circuit pointed out that the fact that the assaults were not of a sexual nature does not preclude them from being considered as evidence in support of Plaintiff's claim of a hostile environment based on sex. *See Roberts*, 998 F.3d at 121; *Smith v. Sheahan*, 189 F.3d 529, 533-34 (7th Cir. 1999) (non-sexual physical assault on a co-worker considered as part of a broader pattern of behavior hostile towards women). The Court finds that when examining the totality of the circumstances, Plaintiff has demonstrated sufficient evidence to show that the harassment was severe or pervasive enough to alter his conditions of employment and create an abusive work environment in violation of Title VII.

The last element that the Court must examine is whether Plaintiff can establish that the harassment he experienced is imputable to Glenn Industrial. Defendants argue that the harassment cannot be imputable to Glenn Industrial because it exercised reasonable care to prevent harassment in the workplace via its comprehensive sexual harassment policy and that Plaintiff unreasonably failed to avail himself of its protections by failing to report the conduct to Mr. Glenn himself. In *Faragher v. City of Boca Raton*, the Supreme Court held that, if an alleged harasser is a supervisor who does not take a tangible employment action against the alleged victim, then the employer may raise an affirmative defense to vicarious liability by showing that

6

the employer took reasonable care to prevent and correct harassment and the alleged victim failed to take advantage of those opportunities. 524 U.S. 775, 807 (1998).

There is no dispute that Plaintiff's supervisor, Rhyner, did not make the decision to terminate the Plaintiff. There is likewise no dispute that Plaintiff did not complain directly to Mr. Glenn, as the employee handbook instructed. However, Plaintiff has presented evidence that he complained about the harassment to Bruce Evans, Ana Glenn, as well as other supervisors. Despite his complaints, no action was taken to address the harassment. In fact, Evans told Plaintiff to just "suck it up." (Doc. No. 17-1, p. 34). Coupled with an arguably ambiguous anti-harassment policy, this is sufficient to create a genuine issue of material fact as to whether the harassment can be imputable to Glenn Industrial.

The Court finds that Plaintiff has presented evidence that could permit a reasonably jury to conclude that he was subjected to unwelcome conduct based on his sex that was sufficiently severe or pervasive to alter the conditions of his employment and create a hostile working environment, and that such conduct is imputable to Glenn Industrial.

IT IS THEREFORE ORDERED THAT Defendant's Motion for Summary Judgment is DENIED;

IT IS FURTHER ORDERED that this case shall be scheduled for trial on the January 24, 2022 trial calendar.

Signed: October 21, 2021

Graham C. Mullen
United States District Judge